SCHOTT, Judge,
concurring:
The critical issue before us is whether Tac’s motion for directed verdict under LSA-C.C.P. Art. 1810 was properly granted. This action was warranted only if the facts and inferences were so overwhelmingly in favor of Tac that reasonable jurors could not arrive at a contrary verdict. Oppenheim v. Murray Henderson Undertaking, 414 So.2d 868 (La.App. 4th Cir.1982). Because they could have reasonably concluded that Tac was liable, especially under C.C. Art. 2317, the motion should not have been granted.
There was evidence that one of the cement blocks serving as a walkway to the rear entrance of the lounge was broken so that it gave way under plaintiff’s foot as he struggled with a heavy beer barrel. The jury could have concluded that this was a defective thing so as to give rise ,to Art. 2317 liability. The next question is whether the evidence provided them with a basis to conclude that Tac had custody over this defective thing so as to make it liable to plaintiff.
First, as between Wohl and Tac, the lease itself contains an assumption of responsibility by Tac for the condition of the premises. However, Tae contends that this particular area was not a part of the leased premises which are described in the lease simply as “Store No. 1 of the Wohl Apartment Building.” Common sense dictates that the parties intended to include in the lease ingress and egress which included the cement block walkway between the parking lot and the back door.
Furthermore, there was considerable evidence of custody in Tac (through its sublease or co-adventurer Melle) as opposed to Wohl. The air conditioning unit and beer refrigerator box serving the lounge were placed on either side of the walk. Customers and suppliers used the walk to enter the lounge and the walk seemed to serve no other, purpose but as an entrance or exit for the lounge. Melle kept his garbage containers in the area and he testified that he felt it was his responsibility and not Wohl’s to clean up the area. He also testified that Wohl did not use this area although some tenants of the building did occasionally place their garbage next to his in the area. Thus, the jury could have concluded that as between Wohl and Tac the latter had custody-
The next question would be custody as between Tac and Melle. Tac leased these premises from Wohl in May, 1965. The lease provided that Tac could not sublet the premises without Wohl’s written consent. However, in June, 1967, the lease was amended to permit Tac “to rent, sublet, assign this lease or grant use or possession to any other party” without Wohl’s written consent. The only conditions were that the subtenant or whatever could not operate a business in competition with other Wohl tenants and no matter what else Tac would remain responsible to Wohl under the lease.
There was no written contract between Tac and Melle. Thus, Tac’s assumed liability insulating Wohl under R.S. 9:3221 was not in turn assumed by Melle. Furthermore, this “sublease” was not a simple transfer of the right to occupy the premises in exchange for rent. Melle testified that he had one of Tac’s coin machines in the lounge with the understanding that he and Tac would split the proceeds of the machine and that if he told Tac to take the machine out he would be evicted forthwith. Thus, the jury might believe that Tac’s primary motive in “subletting” was to have a location for its machine and that the true relationship between Tac and Melle was some sort of joint venture in the operation of the machine or an agency relationship for Melle to operate Tae’s machines. In any event the degree of control maintained over the premises by Tae because of its determination to keep its machine there was a factor for the jury to consider in deciding whether Tac had custody over the lounge and the *424 walk either jointly with Melle or through him as agent.
When the case went to the jury plaintiff’s suit against Tac had been dismissed and the jury was left with interrogatories directed against Wohl and Melle only. In reading the inconsistent answers to the interrogatories we can speculate that the jury may have been frustrated because of its inability to reach the party they thought responsible.
The only fair and just solution in the case is to remand for a new trial. Since Tac was granted its motion for directed verdict it put on no evidence in its own defense, was unconcerned about jury charges, and had no need to argue its case to the jury. From its point of view the record is incomplete and only a new trial can correct the deficiency at this point. We cannot decide Tac’s liability on the record we have before us.
For these reasons and those assigned by my colleagues I respectfully concur.